**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HUASHAN ZHANG, *et al.*,

      Plaintiffs,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

      Defendants.

No. 15-995 (EGS)

---

<u>**MEMORANDUM OPINION**</u>

## I.   Introduction

Plaintiffs Huashan Zhang ("Mr. Zhang") and Mayasuki Hagiwara ("Mr. Hagiwara") (collectively, "Plaintiffs") brought this action on behalf of themselves and a class of EB-5 investors following an announcement from the United States Citizenship and Immigration Services ("USCIS") that cash acquired from a loan would be treated as "indebtedness" and no longer be considered "cash" for purposes of their visa petitions. *See Huashan Zhang v. U.S. Citizenship & Immigr. Servs.*, 344 F. Supp. 3d 32, 41-42 (D.D.C. 2018), *aff'd*, 978 F.3d 1314 (D.C. Cir. 2020).

Now pending before the Court is Plaintiffs' Motion for Attorney's Fees and Expenses. *See* Pls.' Mot. Atty's Fees & Expenses Under Equal Access to Justice Act ("Pls.' Mot."), ECF

1

No. 51. Plaintiffs seek fees for 1,017.85 hours, calculated using three different hourly rates: (1) $429,986.00, applying the regular hourly rates of Plaintiffs' counsel; (2) $452,411.00, applying the *Laffey* Matrix hourly rates; or (3) $198,645.03, applying their calculation of the relevant statutory hourly rate as adjusted for cost-of-living increases. *See id.* at 16-22.[1] Plaintiffs also seek reimbursement of $3,802.00 in costs. *See* Ex. B, ECF No. 51-2. Defendants USCIS; Alejandro Mayorkas,[2] in his official capacity as Secretary of the U.S. Department of Homeland Security; Ur Jaddou,[3] in his official capacity as Director of USCIS; and Alissa Emmel,[4] in her official capacity as Chief of the Immigrant Investor Program as USCIS (collectively, "Defendants") oppose this request. *See* Defs.' Resp. Pls.' Mot. Atty's Fees & Expenses ("Defs.' Opp'n"), ECF No. 54.

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Secretary of the U.S. Department of Homeland Security, Alejandro Mayorkas, is substituted as Defendant for the former Secretary, Jeh Johnson. *See* Fed. R. Civ. P. 25(d).

[3] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Director of USCIS, Ur Jaddou, is substituted as Defendant for the former Director, Leon Rodriguez. *See* Fed. R. Civ. P. 25(d).

[4] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Chief of the Immigrant Investor Program at USCIS, Alissa Emmel, is substituted as Defendant for the former Chief, Nicholas Colucci. *See* Fed. R. Civ. P. 25(d).

Upon careful consideration of Plaintiffs' motion, the opposition, and reply thereto, the applicable law, and the entire record herein, the Court hereby **DENIES IN PART without prejudice** Plaintiffs' Motion for Attorney's Fees, ECF No. 51, as to whether Mr. Hagiwara meets the EAJA's net worth requirement; and **HOLDS IN ABEYANCE IN PART** the Motion as to the remaining issues.

## II.  Background

### A. Factual

This litigation concerns the EB-5 visa program, through which immigrant investors who invest a minimum amount of capital in a new commercial enterprise are able to pursue lawful permanent residency. *See Zhang*, 344 F. Supp. 3d at 408 (citing U.S.C. § 1153(b)(5)(A)). USCIS regulations historically defined capital to include, *inter alia*, lawfully-acquired cash and indebtedness secured by the investor's personally-owned assets. *See* 8 C.F.R. § 204.6(e). But in 2015, USCIS announced that it would treat loan proceeds as indebtedness, not as cash, and that loan proceeds would qualify as capital only if the loan was secured by personally-owned assets. *See Zhang*, 344 F. Supp. 3d at 41.

Because of this change in interpretation, USCIS denied Mr. Zhang and Mr. Hagiwara's EB-5 visa petitions, along with the petitions of other similarly situated EB-5 investors. *Id.* at 42–

43. Plaintiffs filed this lawsuit on June 23, 2015 to obtain relief. *See* Compl., ECF No. 1. On behalf of a class of similarly situated EB-5 petitioners, Plaintiffs sought invalidation of USCIS's loan proceeds rule. *See generally id.*

On November 30, 2018, the Court issued a memorandum opinion and order holding that cash loan proceeds are unambiguously "cash" under 8 C.F.R. § 204.6(e); that USCIS's position contravened the regulation's plain meaning; and that USCIS violated the Administrative Procedure Act, 5 U.S.C. § 706, in issuing the rule without notice and comment. *See Zhang*, 344 F. Supp. 3d at 46-56. The Court also certified the plaintiff class and remanded all EB-5 visa petitions that the agency denied based on its invalid interpretation of loan proceeds. *See id.* at 60-66. The D.C. Circuit affirmed this Court's decision on October 27, 2020. *See Zhang*, 978 F.3d at 1316.

### B. Procedural

Plaintiffs filed this Motion for Attorney's Fees and Expenses on April 23, 2021. *See* Pls.' Mot., ECF No. 51. On June 7, 2021, Defendants filed their brief in opposition to Plaintiffs' motion, *see* Defs.' Opp'n, ECF No. 54; and Plaintiffs replied on July 20, 2021, *see* Pls.' Reply in Supp. Mot. Atty's Fees & Expenses Under Equal Access to Justice Act ("Pls.' Reply"), ECF No. 57. The motion is now ripe and ready for adjudication.

4

### III. Legal Standard

Under the so-called "American Rule," each party is responsible for its own attorney's fees and costs unless a statute expressly authorizes some other form of recovery. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, provides that authorization for "prevailing parties" to recover their attorney's fees and costs in actions against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The party seeking an EAJA fee award must submit an application showing "(1) that it is a prevailing party, (2) its statutory eligibility to receive an award, and (3) the amount sought, including an itemized statement breaking down that claim for reimbursement." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 202 F. Supp. 3d 20, 24 (D.D.C. 2016) (citing 28 U.S.C. § 412(d)(1)(B)), *aff'd*, 857 F.3d 907 (D.C. Cir. 2017). The moving party also must "allege that the position of the United States was not substantially justified." 28 U.S.C. § 412(d)(1)(B). The United States then bears "[t]he burden of establishing 'that [its] position . . . was substantially justified.'" *Scarborough v. Principi*, 541 U.S. 401, 414 (2004) (quoting 28 U.S.C. § 2412(d)(1)(A)).

5

## IV. Analysis

There is no dispute that Plaintiffs are the prevailing party in this litigation. *See Zhang*, 978 F.3d at 1316; *see generally* Defs.' Opp'n, ECF No. 54. The parties disagree as to whether Plaintiffs have satisfied the statutory threshold requirements to recover their attorney's fees and costs under the EAJA. *See* Defs.' Opp'n, ECF No. 54 at 12-16; Pls.' Reply, ECF No. 57 at 8-12. For the reasons that follow, the Court **DENIES IN PART without prejudice** Plaintiffs' Motion for Attorney's Fees and orders the parties to submit supplemental briefing regarding Mr. Hagiwara's net worth at the time this case was filed.

To receive an EAJA fee award, a party must demonstrate that his "net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). The EAJA fee applicant bears the burden of establishing his financial eligibility, *see Ivy Sports Med., LLC v. Burwell*, 174 F. Supp. 3d 130, 138 (D.D.C. 2016); by a preponderance of the evidence, *Sosebee v. Astrue*, 494 F.3d 583, 589 (7th Cir. 2007) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983)).

In support of their motion for attorney's fees, Plaintiffs submit an affidavit from Mr. Hagiwara—the sole fee applicant—in which he avers that his "individual net worth does not, nor has it ever, exceeded the amount of $2,000,000 U.S. dollars." Ex. E,

6

ECF No. 51-5 at 2. Plaintiffs do not submit any further information about Mr. Hagiwara's finances in their briefing. *See* Pls.' Mot., ECF No. 51 at 16. Defendants challenge this "bare assertion" as insufficient to satisfy the EAJA financial-eligibility requirement. Defs.' Opp'n, ECF No. 54 at 12-16. They argue that Mr. Hagiwara should have submitted documentation about his assets and liabilities to enable the Court to assess his net worth. *See id.* at 12-15. They further contend that the record contains information suggesting that Mr. Hagiwara's net worth may exceed the EAJA threshold. *See id.* at 12-15.

The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has not specified what level of supporting evidence is necessary to establish a party's net worth under the EAJA. *Cf., e.g.*, *Haselwander v. McHugh*, 797 F.3d 1, 2 (D.C. Cir. 2015) (per curiam). Courts may consider statements by the party seeking to recover attorney's fees, *see id.* at 2 (weighing letter from the plaintiff to a senator concerning his financial situation); as well as other information in the record, *see Hirschey v. FERC*, 760 F.2d 305, 309 n.19 (D.C. Cir. 1985) (holding that the plaintiff met the financial requirement "according to record documents"). Under certain circumstances, an affidavit alone may be sufficient documentation. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 148 (D.D.C. 2005). For instance, in *Cobell*, the named plaintiffs in the class action submitted

7

affidavits swearing that their net worth fell within the statutory range, and the district court "f[ound] these submissions amply satisf[ied] the requirements of the statute for the entire class." *Id.* The Court agrees that affidavits, particularly those from parties and their attorneys, are "an efficient way of presenting evidence" as to a party's net worth. *Sosebee*, 494 F.3d at 588.

More often, though, courts have relied on additional evidence to assess a plaintiff's net worth. The D.C. Circuit in *Haselwander* considered the following evidence of the plaintiff's qualifying net worth: a letter from the plaintiff to a senator stating that he and his wife "are just mid-level State of Indiana employees" who "cannot afford to pay for the current very high costs of college educations" and an "uncontested statement" from the plaintiff's attorney. *Haselwander*, 797 F.3d at 2 (citation and internal quotation marks omitted). The D.C. Circuit did not hold or suggest that such statements would be sufficient in all EAJA cases. Rather, the *Haselwander* court clearly explained that it had considered "[t]he record in th[e] case" and held the "*record* . . . adequate to show that Haselwander's net worth is less than $2 million." *Haselwander*, 797 F.3d at 2 (emphasis added).

The cases cited by the parties suggest that courts ought to assess the entire record—not just affidavits—to determine

whether a plaintiff has met the EAJA net worth requirement. *See* Defs.' Opp'n, ECF No. 54 at 12-16; Pls.' Reply, ECF No. 57 at 8-12. In *Sosebee*, for example, the Court of Appeals for the Seventh Circuit considered evidence in the record concerning the plaintiff's "recent income, healthcare, and living situation" as well as the "district court findings that Sosebee was eligible to proceed *in forma pauperis*." *Sosebee*, 494 F.3d at 589. Similarly, in *United States v. 88.88 Acres of Land*, the Court of Appeals for the Ninth Circuit examined financial statements and affidavits from accountants to determine the plaintiff's finances. *See United States v. 88.88 Acres of Land*, 907 F.2d 106, 108 (9th Cir. 1990).

Given this caselaw, the Court concludes that it must consider Plaintiffs' affidavit along with evidence in the record to assess whether Mr. Hagiwara meets the EAJA net worth requirement. Contrary to Plaintiffs' argument, *see* Pls.' Reply, ECF No. 57 at 10; consideration of the record aligns with the applicable standard of proof, *see Sosebee*, 494 F.3d at 589. Further, consideration of the record is particularly appropriate where, as here, the record contains significant information about the party's financial situation. *See* Defs.' Opp'n, ECF No. 54 at 14-15 (citing administrative record).

Defendants direct the Court to several points in the record concerning Mr. Hagiwara's finances:

- Mr. Hagiwara indicated that by 2013, he had attended graduate school, held the title of Vice President for two years, and his employer was his millionaire father-in-law Mr. Kodama Takashi ("Mr. Takashi"). *See* Investor Questionnaire A.R. 000061-65.

- That same year, Mr. Hagiwara indicated that his net worth, or joint net worth with spouse was over $1,000,000, and he had an annual income of $200,000 or in excess of $300,000 joint with spouse, and expected the same income in that year. *Id.*

- Mr. Hagiwara also disclosed that he maintained an active account with a securities brokerage firm, but did not disclose the amount. *Id.*

- As of January 2012, Mr. Hagiwara owned 81.25% of shares of J. Kodama, Inc., a Hawaii corporation previously owned by his father-in-law. *See* A.R. 001059; 000062-63.

- That corporation, J. Kodama Inc., at the very least owned a 10-unit condominium building in Waikiki, Honolulu, Hawaii, which was purchased for $2,100,000 for "investment and rental income purposes." *Id.* J. Kodama Inc.[] used a $1.6 million capital contribution from Mr. Takashi Kodama and a $500,000 mortgage loan to acquire the investment property. *Id.* On March 15, 2013, J. Kodama Inc. obtained a mortgage loan of $1,010,000 from HawaiiUSA Federal Credit Union using the Waikiki 10-unit condominium building as collateral. A.R. 000010. Mr. Hagiwara then borrowed $545,000 from his own company, J. Jokama Inc., to make the investment required to obtain the EB-5 visa. A.R. 000010.

- Bank records for J. Kodama show that in 2011, the company kept amount's [sic] between a quarter and half a million dollars in its account during the time preceding Mr. Hagiwara's majority ownership. A.R. 001190.

Defs.' Opp'n, ECF No. 54 at 14-15. Defendants contend that this "information . . . suggests that Mr. Hagiwara's net worth may in fact be well over the threshold amount for EAJA eligibility." *Id.* at 13.

Plaintiffs first contend that the Court need not consider this record evidence at all. *See* Pls.' Reply, ECF No. 57 at 8-12. Specifically, they claim that Defendants' conclusion that Mr. Hagiwara's net worth may exceed $2,000,000 is mere "speculation," which "cannot defeat Mr. Hagiwara's definitive statement, made under penalty of perjury, that his net worth has never exceeded EAJA's qualifying threshold." Pls.' Reply, ECF No. 57 at 11. In a footnote, they argue that Defendants should have sought discovery if they wanted to test Mr. Hagiwara's testimony. *See id.* at 11 n.2 (citing *Nat'l Ass'n of Mfrs. v. Dep't of Lab.*, 159 F.3d 597, 604-05 (D.C. Cir. 1998)). The Court does not agree. Although Defendants do speculate that Mr. Hagiwara's net worth "may" exceed $2,000,000, Defs.' Opp'n, ECF No. 54 at 13; they also urge the Court to consider various facts in the record, *see id.* at 14-15. The Court has a duty to consider these facts and draw appropriate inferences. *See Sosebee*, 494 F.3d at 589. And because Plaintiffs bear the burden of proof at this stage in the proceedings, *see Ivy Sports Med., LLC*, 174 F. Supp. 3d at 138; they must show that Mr. Hagiwara's testimony is consistent with the balance of the record, *see Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1178 (10th Cir. 2000) ("When challenged as to eligibility for an EAJA award, the party seeking such an award must do more than make a bare assertion that it meets the statutory criteria.").

Defendants need not request discovery if the record presents

"reason to doubt . . . a declaration." *Nat'l Ass'n of Mfrs.*, 159

F.3d at 604.[5]

Plaintiffs assert, though, that the record does not provide

any reason to doubt Mr. Hagiwara's unsupported statement as to

his net worth. *See* Pls.' Reply, ECF No. 57 at 11-12. They take

issue with Defendants' references to Mr. Hagiwara's "millionaire

father-in-law" and argue that "the wealth of Mr. Hagiwara's wife

does not speak to *Mr. Hagiwara's* individual net worth for EAJA

purposes." *Id.* at 11. Even assuming *arguendo* that Mr. Hagiwara's

wife's wealth has no bearing on his own net worth, Plaintiffs

fail to take into consideration several significant facts.

First, the record shows that Mr. Hagiwara possessed several

investments and assets before this case was filed,[6] including an

---

[5] Additionally, Plaintiffs' citation to *National Association of Manufacturers* is not helpful to their argument. In that case, the government challenged whether the plaintiff, an association, met the net worth requirement because the association had sued in its representational capacity and individual members might have a net worth exceeding $2,000,000. *See Nat'l Ass'n of Mfrs.*, 159 F.3d at 600. The D.C. Circuit faulted the government for not seeking discovery on the question of whether the association's members were liable for the costs of the litigation or otherwise controlled the litigation. *See id.* at 604-05. That issue is decidedly unlike the issue before the Court here.
[6] Plaintiffs argue that these facts are irrelevant because they come from Mr. Hagiwara's Form I-526 petition, which he filed in March 2014, more than one year before they filed this case in June 2015. *See* Pls.' Reply, ECF No. 57 at 12 n.4. They do not explain why the Court should infer that Mr. Hagiwara's financial situation—whatever it was in March 2014—changed drastically between March 2014 and June 2015.

active securities brokerage account and ownership of 81.25% of shares of a corporation previously owned by his father-in-law. *See* A.R. 001059, 000062-63. The record also shows that the corporation possessed significant assets and liabilities, such as a 10-unit condominium building in Waikiki, Honolulu, Hawaii and associated mortgages. *See id.*; A.R. 000010. Despite this evidence, Plaintiffs have chosen to submit only a single statement from Mr. Hagiwara that his net worth has never exceeded $2,000,000. *See* Ex. E, ECF No. 51-5 at 2. The record therefore raises concerns about the accuracy of this testimony. *See Shooting Star Ranch, LLC*, 230 F.3d at 1178. In choosing not to provide the Court with any documentation regarding the value of his assets and liabilities, Plaintiffs have failed to meet their burden of proof. *Cf. Broaddus v. U.S. Army Corps of Engineers*, 380 F.3d 162, 169 (4th Cir. 2004) ("[A] district court is capable of determining an applicant's net worth based upon a sworn affidavit . . . , provided that the affidavit includes documentation of the applicant's liabilities and assets.").

At the same time, Defendants' evidence does not establish that Mr. Hagiwara's net worth exceeded $2,000,000. As they concede in their opposition briefing, the administrative record contains "scant information" about Mr. Hagiwara's assets and liabilities at the time Plaintiffs filed this case. Defs.'

Opp'n, ECF No. 54 at 15. Accordingly, the Court will order supplemental briefing on the question of whether Mr. Hagiwara meets the EAJA's net worth requirement.

**IV.  Conclusion**

For the foregoing reasons, the Court **DENIES IN PART without prejudice** Plaintiffs' Motion for Attorney's Fees, ECF No. 51, as to whether Mr. Hagiwara meets the EAJA's net worth requirement; and **HOLDS IN ABEYANCE IN PART** the Motion as to the remaining issues. The parties shall meet and confer and by no later than March 17, 2023 propose a schedule for supplemental briefing.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **February 17, 2023**