**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

HUASHAN ZHANG, *et al.*,

       Plaintiffs,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

       Defendants.

No. 15-995 (EGS)

<u>**MEMORANDUM OPINION**</u>

After prevailing in their lawsuit challenging a decision by Defendants United States Citizenship and Immigration Services' ("USCIS"), Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security; Kika Scott, in her official capacity as Director of USCIS; and Alissa Emmel, in her official capacity as Chief of the Immigrant Investor Program as USCIS (collectively, "Defendants" or "the government")[1] related to investor visa applications, named class Plaintiffs, Huashan Zhang ("Mr. Zhang") and Mayasuki Hagiwara's ("Mr. Hagiwara") (collectively, "Plaintiffs"), sought attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"). *See* Pls.' Mot. for Attorneys' Fees & Expenses Under the Equal

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current government officials are substituted as Defendant for their predecessors. *See* Fed. R. Civ. P. 25(d).

Access to Justice Act ("Mot."), ECF No. 51[2]; *see Huashan Zhang v. U.S. Citizenship & Immigr. Servs.*, 344 F. Supp. 3d 32, 41-42 (D.D.C. 2018), *aff'd*, 978 F.3d 1314 (D.C. Cir. 2020).

On February 17, 2023, this Court denied in part without prejudice and held in abeyance in part Plaintiffs' Motion for Attorney's Fees and Expenses Under the EAJA ("Motion") while the parties provided supplemental briefing on Plaintiffs' EAJA eligibility. *See* Order, ECF No. 59. The supplemental briefing is complete and the Motion, as well as the supplements, are now pending before this Court. Upon careful consideration of the briefs, the applicable law, and the entire record herein, the Court hereby **GRANTS IN PART** Plaintiffs' Motion and awards Plaintiffs fees in the amount of $207,702.33 and expenses in the amount of $19,850.00.

## I.   Background

### A. Underlying Litigation

The Court previously described the background of this case. *See* Mem. Op., ECF No. 58. To summarize, Plaintiffs brought this action on behalf of themselves and a class of people who sought "EB-5 visas." *See Zhang*, 344 F. Supp. 3d at 41-42. The EB-5 visa program is a system through which immigrants who invest a

---

[2] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

minimum amount of capital in a new commercial enterprise may pursue lawful permanent residency in the United States. *See Zhang*, 344 F. Supp. 3d at 40 (citing U.S.C. § 1153(b)(5)(A)). Prior to 2015, USCIS had defined capital to include lawfully acquired cash and indebtedness. *See id.* at 41; 8 C.F.R. § 204.6(e). But in 2015, USCIS announced that it would treat loan proceeds as "indebtedness" instead of "cash" for purposes of EB-5 visa petitions, unless the loan was secured by personally owned assets. *See Zhang*, 344 F. Supp. 3d at 41.

On June 23, 2015, Plaintiffs filed this lawsuit on behalf of themselves and other similarly situated individuals who were denied EB-5 visas due to this change in interpretation, seeking to invalidate USCIS's loan proceeds rule. *See id.* at 42–43; Compl., ECF No. 1. On November 30, 2018, the Court issued a memorandum opinion and order holding that cash loan proceeds are unambiguously "cash" under 8 C.F.R. § 204.6(e); that USCIS's position contravened the regulation's plain meaning; and that USCIS violated the Administrative Procedure Act, 5 U.S.C. § 706, in issuing the rule without notice and comment. *See Zhang*, 344 F. Supp. 3d at 46–56. The Court also certified the plaintiff class pursuant to Federal Rule of Civil Procedure 23(b)(2), which was the applicable rule for class certification because "USCIS' interpretation of its regulation has been or will be applied generally to the entire class and plaintiffs seek

declaratory and injunctive relief that will benefit the class as a whole." *Id.* at 65. Additionally, the Court remanded all EB-5 visa petitions that the agency denied based on its invalid interpretation of loan proceeds. *See id.* at 60-66. On October 27, 2020, the U.S. Circuit Court for the District of Columbia Circuit ("D.C. Circuit") affirmed the Court's decision. *See Zhang*, 978 F.3d at 1316.

### B. Attorneys' Fees

After the time elapsed for the government to seek certiorari before the U.S. Supreme Court, Plaintiffs filed this Motion on April 23, 2021. *See* Mot. for Attorneys' Fees, ECF No. 51. In their initial Motion, Plaintiffs provided documentation and argued that they were entitled to fees for 1,017.85 hours, under the EAJA, and gave three different calculations: (1) $429,986.00, applying the regular hourly rates of Plaintiffs' counsel; (2) $452,411.00, applying the *Laffey* Matrix hourly rates; or (3) $198,645.03, applying their calculation of the relevant statutory hourly rate as adjusted for cost-of-living increases. *See id.* at 16-22. Plaintiffs also sought reimbursement of $3,802.00 in expenses and/or costs.[3] *See* Ex. B, ECF No. 51-2.

---

[3] As explained more below, *infra* Part III.C(2)(b), the parties use both the terms "costs" and "expenses" when referring to the same items.

4

On June 7, 2021, the government filed its brief in opposition to Plaintiffs' motion ("Opposition"). *See* Defs.' Resp. to Mot. ("Opp'n"), ECF No. 54 at 12–16. Defendants did not contest that Plaintiffs were the prevailing party, nor assert that their positions were substantially justified. *See id.* Instead, they argued: (1) Mr. Hagiwara, the only Plaintiff seeking fees, did not meet the statutory net worth requirements for EAJA relief; (2) Plaintiffs failed to provide notice to class members pursuant to Federal Rule of Civil Procedure 23(e); and (3) that if the Court awards relief, Plaintiffs are not entitled to the full amount requested. *See id.* Plaintiffs replied on July 20, 2021. *See* Pls.' Reply in Supp. Mot. Atty's Fees & Expenses Under Equal Access to Justice Act ("Reply"), ECF No. 57.

In its February 17, 2023 Memorandum Opinion, the Court determined that it needed additional information regarding Plaintiffs' net worth eligibility before reaching the other issues in Plaintiffs' Motion. *See* Mem. Op., ECF No. 58 at 3, 14. Specifically, it held that even though a declaration may be sufficient in some situations, it needed additional information to substantiate Mr. Hagiwara's net worth claim given the government's arguments that aspects of the Administrative Record ("AR") cast doubt on Mr. Hagiwara's credibility. *See id.* Accordingly, the Court denied in part without prejudice and held

in abeyance in part Plaintiffs' Motion and ordered supplemental briefing on the question of Mr. Hagiwara's eligibility for EAJA relief. *See id.*; Order, ECF No. 59.

On June 30, 2023, Plaintiffs submitted their Supplemental Memorandum on Mr. Hagiwara's net worth ("Supplement"). *See* Pls.' Suppl. Br. In Support of Mot. for Attorneys' Fees & Costs Under the Equal Access to Justice Act ("Suppl."), ECF No. 62. On October 30, 2023, Defendants filed their Opposition to the Supplement ("Opposition to Supplement"). *See* Defs.' Br. In Opp'n to Pls.' Suppl. Br. ("Opp'n to Suppl."), ECF No. 66. On November 13, 2023, Plaintiffs submitted their Reply ("Supplement Reply"). *See* Pls.' Suppl. Reply Br. in Support of Mot. for EAJA Fees ("Suppl. Reply"), ECF No. 67.

In addition to arguing that Mr. Hagiwara is eligible for EAJA relief, Plaintiffs assert that they are entitled to recover the additional attorneys' fees and expenses and/or costs related to the preparation of their Supplement and accompanying evidence. *See* Supp'l, ECF No. 62 at 6. This includes fees for 30.7 hours working on the Supplement; 19.9 hours working on the Supplement Reply; $16,487 in expenses and/or costs for the Supplement; and $3,363 in expenses and/or costs for the Supplement Reply. *Id.*; Supp'l Reply, ECF No. 67. The government argues that if the Court concludes that Plaintiffs are entitled

to relief, Plaintiffs should not recover additional costs and fees for preparing their supplement.

## II.  Legal Standard

Under the so-called "American Rule," each party is responsible for its own attorney's fees and costs unless a statute expressly authorizes some other form of recovery. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). The EAJA provides that authorization for "prevailing parties" to recover their attorney's fees and costs in actions against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable government actions." *I.N.S. Comm'r v. Jean*, 496 U.S. 154, 163 (1990).

The party seeking an EAJA fee award must submit an application showing "(1) that it is a prevailing party, (2) its statutory eligibility to receive an award, and (3) the amount sought, including an itemized statement breaking down that claim for reimbursement." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 202 F. Supp. 3d 20, 24 (D.D.C. 2016) (citing 28 U.S.C. § 412(d)(1)(B)), *aff'd*, 857 F.3d 907 (D.C. Cir. 2017). The moving party also must "allege that the position of the

7

United States was not substantially justified." 28 U.S.C. §

412(d)(1)(B). The United States then bears "[t]he burden of

establishing 'that [its] position . . . was substantially

justified.'" *Scarborough v. Principi*, 541 U.S. 401, 414 (2004)

(quoting 28 U.S.C. § 2412(d)(1)(A)).

### III. Analysis

As noted, several issues are undisputed, including that

Plaintiffs were the prevailing party and that the government's

position was not substantially justified. *See* Opp'n, ECF No. 54.

Accordingly, the Court need only analyze the following issues in

this Memorandum Opinion: (1) whether Plaintiffs are eligible for

EAJA relief based on Mr. Hagiwara's net worth; (2) whether

Plaintiffs' failure to provide notice to class members requires

the Court to reject their request for relief; and (3) if the

Court rules in favor of Plaintiffs on issues two and three, what

amount they are entitled to recover. The Court will address each

issue in turn.

### A. EAJA Eligibility

The one remaining question for this Court to resolve

related to EAJA eligibility is whether Mr. Hagiwara's net worth

was below the statutory limit at the time this suit began. When

the Court previously considered Plaintiffs' Motion, it only had

the benefit of Mr. Hagiwara's declaration on this issue. *See*

Mem. Op., ECF No. 58; Order, ECF No. 59. Now, Plaintiffs have

submitted additional evidence and expert analysis to substantiate the claims in Mr. Hagiwara's declaration. Although the government continues to assert that there are reasons to doubt Mr. Hagiwara's credibility, it has not submitted any evidence nor expert opinion to contradict Plaintiffs' Supplement. As explained below, the Court concludes that Plaintiffs have satisfied their burden to show EAJA eligibility.

### 1. Mr. Hagiwara's Background and Net Worth

A brief overview of Mr. Hagiwara's background leading up to this litigation provides context for his net worth determination. Mr. Hagiwara married his wife, Eiko Hagiwara ("Mrs. Hagiwara"), on March 13, 2011. *See* AR, ECF No. 27-1 at 282; Hagiwara Second Decl., ECF No. 62-2 ¶ 1; Reply to Supp'l, ECF No. 67 at 4; Opp'n to Supp'l, ECF No. 66 at 4 n.1. Mrs. Hagiwara is the granddaughter of a famous Japanese painter, Yukio Kodama ("Mr. Yukio Kodama"). *See* AR, ECF No. 27-1 at 253; Hagiwara Second Decl., ECF No. 62-2 ¶ 5. Mr. Hagiwara's wife and his father-in-law, Takashi Kodama ("Mr. Kodama"), inherited wealth from Mr. Yukio Kodama through Mr. Kodama's deceased wife. *See* AR, ECF No. 27-1 at 253; Hagiwara Second Decl., ECF No. 62-2 ¶ 5.

Mr. Kodama established J. Kodama, Inc. ("JKI") on April 5, 2011. *See* AR, ECF No. 27-1 at 252. On January 1, 2012, Mr. Kodama gave Mr. Hagiwara 1,300,000 of his 1,600,000 shares of

JKI by "deed of gift." *Id.* at 259. Subsequently, Mr. Kodama gave Mr. Hagiwara the title of Vice President of JKI. *Id.* at 37, 39. On July 1, 2013, JKI entered into a loan agreement with Mr. Hagiwara whereby the company lent him $545,000 "for the purpose of making an investment in order to immigrate to the United States[.]" *Id.* at 64. Specifically, the loan was for Mr. Hagiwara to invest in CMB Export Infrastructure Investment Group XI, LP, which is a "California limited partnership formed in August 2012" with plans to develop and construct a solar power-generating facility in Nevada. *Id.* at 9, 65. Mr. Hagiwara made this investment to support his I-526 Petition, which he submitted to USCIS on March 17, 2014. *Id.* at 8-9; *see also Zhang*, 344 F. Supp. 3d at 40 (explaining how non-citizens seeking to gain residence through the EB-5 program must file a I-526 petition showing their eligibility). Mr. Hagiwara outlined the details of how he was able to make a qualifying investment in his I-526 petition. *See* AR, ECF No. 27-1 at 4-14. USCIS denied Mr. Hagiwara's I-526 Petition on March 27, 2015. *See id.* at 4. Plaintiffs then filed this action on June 23, 2015. *See* Compl., ECF No. 1.

Plaintiffs have now submitted additional evidence demonstrating Mr. Hagiwara's EAJA eligibility. Specifically, they have submitted evidence and expert opinions demonstrating that Mr. Hagiwara's net worth was less than $1,600,000 at the

10

time Plaintiffs filed this action, which is approximately $400,000 less than the EAJA threshold. *See* Supp'l, ECF No. 62; Reply to Supp'l, ECF No. 67. Plaintiffs' counsel "retained the forensic accounting firm Kapila Mukamal ("Kapila") to determine Mr. Hagiwara's net worth as of June 23, 2015." Supp'l, ECF No. 62 at 3 (citing Pls.' Ex. 1, ECF No. 62-1). Melissa Davis ("Ms. Davis"), a Kapila partner and Certified Public Accountant, directed the firm's analysis. *See id.* Ms. Davis has "extensive forensic-accounting experience, including engagements with the Securities and Exchange Commission, the Federal Trade Commission, the Commodity Futures Trading Commission, the [Federal Bureau of Investigation], and U.S. Attorneys' Offices." *Id.* (citing Pls.' Ex. 1, ECF No. 62-1 at 19). The government has not challenged Ms. Davis's nor Kapila's qualifications to conduct such an analysis. *See* Opp'n to Supp'l, ECF No 66. Based on its forensic analysis of Mr. Hagiwara's assets and liabilities, Kapila concluded that "Mr. Hagiwara's net worth as of June 23, 2015, was approximately $1,575,883." *See* Pls.' Ex. 1, ECF No. 62-1 at 6.

To reach this conclusion, Ms. Davis "reviewed the documents and information listed in" Exhibit 1 to her declaration, which includes the following appendices: (A) Mr. Hagiwara's U.S. Federal Income Tax Returns 2014-2015; (B) U.S. Corporation Income Tax Returns filed by JKI in 2013, 2014, and 2015; (C) the

Settlement Statement for JKI's purchase of a condo building in
Honolulu; (D) a Deed of Gift from Takashi Kodama to Mr.
Hagiwara; (D.1) JKI's stock ledger; (E) a Mortgage Security
Agreement and Financing Statement from HawaiiUSA and JKI for the
$1,010,000 loan to JKI; (F) a Loan Agreement between Mr.
Hagiwara and JKI for the $545,000 loan that he used to make his
EB-5 Investment in CMB Export; (G) the CMB Export Offering
Memorandum, Subscription Agreement, and Partnership Agreement;
(H) a Certificate of Japanese Assets and Liabilities issued
Fumitaka Kojama on June 5, 2023; (I) Last Will and Testament of
Junko Kodama-Agreement on Division of Inheritance dated June 21,
2000; (J) Zillow.com and Honolulu Property Appraiser Website;
and (K) Declaration of Mr. Hagiwara. *See* Pls.' Ex. 1 to Supp'l,
ECF No. 62-1 at 14. Plaintiffs' Counsel also retained a
Japanese-licensed accountant to "(1) help Mr. Hagiwara secure
certifications of the value of his Japanese bank accounts as of
June 23, 2015 (as bank statements are no longer available); (2)
determine whether Mr. Hagiwara was required to file Japanese tax
returns; and (3) provide a certification as to Mr. Hagiwara's
Japan-held assets and liabilities." Supp'l, ECF No. 62 at 4 n.1.

### 2. Mr. Hagiwara Satisfies the EAJA's Eligibility Criteria

As noted, the government provides no evidence or expert
opinion to contradict Plaintiffs' supplemental submission. *See*

*generally* Opp'n to Supp'l, ECF No. 66. The entire basis of its argument against Mr. Hagiwara's EAJA eligibility remains as it was when it opposed Plaintiffs' Motion: purported reasons to doubt Mr. Hagiwara's credibility and current statements regarding his net worth at the time he filed the suit. As explained below, the government's arguments are unpersuasive, in part because some of these arguments are themselves based on misrepresentations of the record. Plaintiffs have met their burden to show Mr. Hagiwara's qualification for EAJA relief.

### a. Vice President Title

The first of the inconsistencies alleged by the government is its assertion that the AR shows Mr. Hagiwara "indicated to USCIS that he was the Vice President of Takashi Kodama for at least the five years preceding July 2013 and at the time he filed his I-526 petition" even though he now claims that his father-in-law gave him the title of Vice President when he gifted Mr. Hagiwara the shares in JKI. *See* Opp'n to Supp'l, ECF No. 66 at 4-5 (comparing AR, ECF No. 27-1 at 000062 with Hagiwara Decl., ECF No. 62-1 at 309 ¶ 12). There is no such inconsistency. Mr. Hagiwara states in his Second Declaration that "[a]fter [his] father-in-law gifted [him] shares in J. Kodama Inc., he gave [Mr. Hagiwara] the title of 'Vice President.'" Hagiwara Second Decl., ECF No. 62-2 ¶ 12. Because the AR shows that Mr. Kodama gifted Mr. Hagiwara the shares to

JKI on January 1, 2012, it is entirely consistent for Mr. Hagiwara to write on the form cited by the government, which is dated July 3, 2013, that his position at the time was Vice President of JKI. *See* AR, ECF No. 27-1 at 37, 39.

The government also claims that Mr. Hagiwara "indicated to USCIS that he was the Vice President of Takashi Kodama for at least the five years preceding July 2013[.]" Opp'n to Supp'l, ECF No. 66 at 4–5. But Mr. Hagiwara made no such statement on this form. *See* AR, ECF No. 27-1 at 37. After answering question 8 by identifying his current position and employer as Vice President of Takashi Kodama, Mr. Hagiwara provided *no* answer to question 9, which asked him to list "Other occupations or positions during the past five (5) years." *Id.* This answer indicates that Mr. Hagiwara had no *other* employment in the five preceding years; not that he was vice president for JKI during this time. *Id.* Upon this closer reading of the record, these answers provide no reason to doubt Mr. Hagiwara's statements.

### b. Net Worth in 2013

The second alleged inconsistency has to do with Mr. Hagiwara's indication on the same 2013 form that his "Net worth, or joint net worth with spouse" was "Over $1,000,000." AR, ECF No. 27-1 at 37. The government raises this in a summary of information it views as creating inconsistencies, *see* Opp'n to Supp'l, ECF No. 66 at 4; but does not expand on the alleged

14

issue as it does the others. Regardless, Mr. Hagiwara's
statement does not raise an issue based on either an
interpretation of Mr. Hagiwara's individual net worth or his
joint net worth with his spouse. According to Ms. Davis, Mr.
Hagiwara's individual net worth was approximately $1.6 million
at the time the lawsuit was filed, which means his answer on the
form would be correct based on his own net worth. *See* Davis
Decl., ECF No. 62-1 ¶ 11. Additionally, Ms. Davis gave the
expert opinion that "according to SEC guidance, Mr. Hagiwara was
permitted to include his wife's *individual assets* in the
calculation, even if those asserts were not joint property."
Davis Supp'l Decl., ECF No. 67-1 ¶ 14. Therefore, based on
either interpretation, Mr. Hagiwara's answer here is consistent
with his current representations regarding his EAJA eligibility.

### c. Income in 2013

Similarly, the government takes issue with Mr. Hagiwara's
answer to another question on this same 2013 form that he
"'individually had income in excess of $200,000 or joint income
with his spouse in excess of $300,000 in each of the two most
recent years, and reasonably expected an income in excess of
$200,000 or joint income with his spouse in excess of $300,000
that year.'" Opp'n to Supp'l, ECF No. 66 at 4. The government
posits that this is inconsistent with Mr. Hagiwara's current
statements that he '"did not earn any employment income' from

15

'the time of [his] marriage in March 2011 through June 2015'";
"'did not receive a salary or any compensation' for 'assist[ing]
his father-in-law with some of his business dealings'"; "'did
not receive any salary or other compensation' for being the Vice
President of Takashi Kodama"; and that he was "'supported by
[his] wife and her family and living in [his] wife's home' from
'the time [he] married Eiko [Hagiwara] in 2011 through the time
[he] filed this lawsuit in June 2015."' *Id.* at 5 (quoting
Hagiwara Decl., ECF No. 62-1 at 308–09, ¶¶ 4, 6, 12). However,
Mr. Hagiwara's current statements are consistent with him
answering the form based on his spouse's income and Mrs.
Hagiwara's support of him during their marriage.

The government also points to Mr. Hagiwara's statement that
"[a]s of June 23, 2015, [he] did not jointly own any property
with [his] wife with more than a de minimis value. *Id.* (citing
Hagiwara Second Decl., ECF No. 62-1 ¶¶ 15, 16). But as
Plaintiffs' expert explains, Mr. Hagiwara did not need to have
*joint ownership* of his wife's income for him to answer this
question based on income he and his spouse expected to receive.
*See* Davis Supp'l Decl., ECF No. 67-1 ¶¶ 10, 16.[4] Again, this

---

[4] Not part of the alleged inconsistencies, the government also
asserts that the tax returns Plaintiffs provided raise
"additional credibility concerns." Opp'n to Supp'l, ECF No. 66
at 6. Specifically, that Mr. Hagiwara did not file his 2014 and
2015 tax returns until 2021, and that J. Kodama's tax returns
may be inaccurate because they did not mention the $545,000 loan

answer on the 2013 form does not give reason to doubt the truthfulness of Mr. Hagiwara's current statements.

### d. Securities Brokerage Account

Finally, the government contends that Mr. Hagiwara's answer to question 17 on the same 2013 form where he checked "Yes" that he "'maintained an active account with a securities brokerage firm'" instead of "No" contradicts his current statement that "[a]t no time as of June 2015, or before that date, did [he] have an account with a securities brokerage firm." Opp'n to Supp'l, ECF No. 66 at 6 (*comparing* AR, ECF No. 27-1 001059, 000062-63, *with* Hagiwara Decl., ECF No. 62-1 at 309 ¶ 14. This is the only answer that has any inconsistency. Plaintiffs admit as much, but they describe it as an error due to his misunderstanding in the form's translation. *See* Reply to Supp'l, ECF No. 67 at 6-7. The government claims that such a misunderstanding is implausible because Mr. Hagiwara initialed

---

to Mr. Hagiwara in the "loans to shareholders" section. *See id.* Neither allegation is persuasive. First, Plaintiffs explain that Mr. Hagiwara paid his taxes as soon as he became aware of his obligation to do so in 2021. *See* Reply, ECF No. 67 at 7. Second, Plaintiffs cite to the forensic accountant's explanation that the loan was indeed reflected on J. Kodama's tax-return, but listed under a different section, "Additional Paid in Capital," and that the location of the loan "had no effect on the forensic accountant's valuation of J. Kodama Inc. or Mr. Hagiwara's interest in it—and therefore no impact on her calculation of Mr. Hagiwara's net worth." Reply to Supp'l, ECF No. 67 at 7 (citing Ex. 1, ECF No. 67-1 ¶¶ 17-21). Therefore, the Court rejects the government's argument that the Court should infer some sort of nefarious activity or attempt to hide assets from these.

at the end of the form to verify that he understood it, or had it translated, so that he could understand it. *See* Opp'n, ECF No. 66 at 6–7; AR at 39. The Court does not view such an indication as dispositive, especially because it appears that Mr. Hagiwara had to agree that he understood the form in order to be able to submit it.[5] Moreover, neither party has pointed to evidence of any brokerage or securities account existing.

There is no other indication that Mr. Hagiwara has undertaken robust efforts to conceal the existence of such an account. It is far more likely that Mr. Hagiwara made a mistake because he misunderstood the translation of question. Indeed, there are other indications on the same form that Mr. Hagiwara did not fully understand its contents. For example, when was asked to respond to the prompt in question 21: "The undersigned states that his or her investment objectives are as follows", Mr. Hagiwara wrote "Kenneth Yamamoto, CPA and N&K CPAs, Inc." AR, ECF No. 27-1 at 39. Clearly, writing the names of CPAs does not answer a question about Mr. Hagiwara's "investment objectives." *Id.* It is unclear why, but the government offers a

---

[5] The Court does not need to resolve whether Mr. Hagiwara's possible misunderstanding of questions on this 2013 form might impact the reliability of his answers on that form. The only questions presently before the Court are whether Mr. Hagiwara's answers on this form are inconsistent with his current statements regarding his net worth at the time such that his current statements are not credible for the purpose of determining his EAJA eligibility.

representation of this answer that minimizes Mr. Hagiwara's apparent misunderstanding: claiming that "Mr. Hagiwara . . . 4) retained 'Kenneth Yamamoto, CPA' and 'N&K CPAs, Inc.' to assist him with his 'investment objectives[.]'" Opp'n to Supp'l, ECF No. 66 at 4. The government gives no elaboration for why this information is supposedly relevant; but when read in context, it further shows that Mr. Hagiwara did not fully understand the form.

### e. Additional Evidence

The government takes issues with some of the other supplemental evidence that Plaintiffs submitted. *See* Opp'n to Supp'l, ECF No. 7–8. Specifically, it faults Plaintiffs for not submitting records from Mr. Hagiwara's bank accounts over time; and for not submitting financial information for his wife. *See id.* Neither of these arguments is persuasive. As Mr. Hagiwara has explained, his bank statements were no longer available from 2015, so instead he provided snapshots of his bank accounts on those dates. *See* Reply to Supp'l, ECF No. 67 at 8. Plaintiffs also point out that they had to incur significant effort and expense to even obtain this information. *See id.* Additionally, they explain that a spouse's net worth has no bearing on an EAJA applicant's net worth determination; and therefore, it was unnecessary to submit information about Mrs. Hagiwara's net worth. *Id.* at 5 n.1; Supp'l, ECF No. 62 at 5. Providing even

more information, according to Plaintiffs, would result in unnecessary additional litigation that should not be necessary for an attorneys' fees request. *See id.* (citing *Broaddus v. U.S. Army Corps of Engineers*, 380 F.3d 162, 168 (4th Cir. 2004) (citations omitted)).

The Court agrees. There is now ample evidence from which the Court can conclude that Plaintiffs have demonstrated Mr. Hagiwara's eligibility for EAJA relief. As explained, the government's arguments that Mr. Hagiwara's statements are inconsistent or contradictory are either unfounded or, in one limited instance, sufficiently justified such that there is no reasonable basis for concluding that Mr. Hagiwara has engaged in a fraudulent scheme to conceal assets so that he could recover attorneys' fees in this litigation. Concluding that Plaintiffs have shown they are eligible for relief under the EAJA, the Court will proceed to address the remaining aspects of their Motion.

### B. Federal Rule of Civil Procedure 23(h)(1)

Defendants also argue that the Court must deny Plaintiffs' Motion because Plaintiffs' counsel did not direct notice of their request for fees to all class members, per Federal Rule of Civil Procedure 23(h)(1). *See* Opp'n, ECF No. 54 at 16–17. Plaintiffs respond that: (1) Rule 23(h)(1) does not require individual notice to the class members in this situation; but

that (2) even if it did, their failure to provide it was
harmless and does not defeat their motion. *See* Reply, ECF No. 57
at 13–17.

Core to Plaintiffs' arguments are the facts that: (1) their
class was certified pursuant to Rule 23(b)(2) and only
sought/obtained injunctive, as opposed to monetary, relief; (2)
they litigated their case to judgment instead of reaching a
settlement; and (3) the statute under which they seek fees, the
EAJA, requires fees be paid directly by Defendants as opposed to
out of some common fund, which does not exist here. There is
scant precedent on whether or the extent to which Rule 23(h)(1)
requires notice in this situation, but the Court concludes based
on the plain language of the Rule that it requires some kind of
notice to class members. It need not conclusively resolve this
question, however, because the Court holds that even if notice
is required, the failure to provide it in this case is harmless
and therefore does not defeat Plaintiffs' Motion.

Upon its plain reading, Federal Rule of Civil Procedure
23(h)(1) requires that class counsel provide notice to class
members when they seek attorneys' fees. In pertinent part, the
Rule provides that "[a] claim for an award must be made by
motion under Rule 54(d)(2), subject to the provisions of this
subdivision (h), at a time the court sets. Notice of the motion
must be served on all parties and, for motions by class counsel,

21

directed to class members in a reasonable manner." Fed. R. Civ.

P. 23(h)(1). The 2003 Advisory Committee comments to this rule

state that "Because members of the class have an interest in the

arrangements for payment of class counsel whether that payment

comes from the class fund or is made directly by another party,

notice is required in all instances." *See* Advisory Comment to

Fed. R. Civ. P. 23(h)(1). Further, "[i]n adjudicated class

actions, the court may calibrate the notice to avoid undue

expenses." *Id.* Though not directly in conflict, it is also

notable that elsewhere in Rule 23, notice to class members

certified pursuant to Rule 23(b)(2) is described in optional

terms: "[f]or any class certified under Rule 23(b)(1) or (b)(2),

the court may direct appropriate notice to the class." Fed. R.

Civ. P. 23(c)(1).

Neither the U.S. Supreme Court nor D.C. Circuit has

squarely considered Rule 23(h)(1)'s applicability in this

context, nor the result of failing to comply with it; and

persuasive authority from other judges on this court is limited.

Though not directly on point, another judge on this court

addressed Rule 23(h)(1) shortly after the provision was added to

the rule in 2003. *See Cobell v. Norton*, 407 F. Supp. 2d 140,

147-48 (D.D.C. 2005). In that case, the court determined that

*individual* notice of an interim fee petition did not need to be

provided to all of the approximately 500,000 individual class

22

members and notice on the website for the class action was
sufficient. *See id.* The court had previously certified the named
plaintiffs under Rules 23(b)(1)(A) and (b)(2). *See Cobell v.
Babbitt*, 30 F. Supp. 2d 24, 28 (D.D.C. 1998).

More recently, another judge on this court approved a
proposed settlement agreement for plaintiffs who sought
injunctive relief on behalf of a class of "soldiers enlisted in
the U.S. Army . . . through the Military Accessions Vital to the
National Interest . . . program" within a certain timeframe and
who had not been discharged or been discharged under certain
conditions, pursuant to Rule 23(b)(2). *Calixto v. Dep't of the
Army*, Civ. Action No. 18-1551, 2022 WL 17976437 (D.D.C. 2022).
The proposed settlement included an agreement to provide
attorneys' fees to class counsel. *See id.; see also* Joint Mot.
for Cert. of Class, Appointment of Class Counsel, and Approval
of Settlement Agreement in *Calixto v. Dep't of the Army*, ECF No.
253 in Case No. 18-cv-1551 at 4 ("Attorneys' fees, including the
timing of payment, are described in Paragraph 6 of the
Settlement Agreement and do not impact the amount or timing of
the injunctive-type relief being provided to the named
Plaintiffs and putative class members."). It appears that the
only notice that the class members received of the attorneys'
fees was as part of the settlement as a whole. *See* Notice
Confirming Methods By Which Notice of the Proposed Settlement Is

Being Provided to Class Members in *Calixto v. Dep't of the Army*, ECF No. 255 in Case No. 18-cv-1551.

There is a similar dearth of persuasive authority outside of this Circuit. Courts that have considered the question seem to agree that notice is required, but not individual notice. For example, the U.S. District Court for the Northern District of California held that individual notice was not required when a class was certified under Rule 23(b)(2) and plaintiffs' counsel sought fees and costs under the EAJA. *See* Order, ECF No. 245 in *J.L. v. Cuccinelli*, Case No. 18-cv-4914 (N.D. Cal.). In relevant part, the Court held:

> The Parties are not required to give direct notice of the proposed Fees and Costs Settlement Agreement because the class is certified under Rule 23(b)(2) and class members' rights will not be prejudiced by this Fees and Costs Settlement Agreement. The notice provided to class members through the public filing and the postings of the motion for approval and the Fees and Costs Settlement Agreement on Public Counsel's website is sufficient.

*Id.* at 2-3.

The dilemma here, however, is that Plaintiffs do not claim to have provided *any* notice to the other class members of the Motion, even on a non-individual basis. Therefore, even if the Court agrees with its colleagues and concludes that it has latitude to determine what is appropriate notice, it would still not mean that Plaintiffs have satisfied this requirement. But

24

this is not the end of the inquiry. Plaintiffs also argue that if they failed to provide notice to class members when required to do so, such an error was harmless. The Court agrees with this argument.

The circumstances in which Plaintiffs' Motion arises are significant. First, the relief that Plaintiffs seek has no impact on the relief they obtained as a result of this litigation. Plaintiffs were certified pursuant to Federal Rule of Civil Procedure 23(b)(2), meaning that they only sought and obtained non-monetary relief. *See* Fed. R. Civ. P. 23(b)(2) ("[T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). Second, Plaintiffs litigated their case to judgment, meaning that the pending request for fees and expenses and/or costs does not arise in the context of a proposed settlement agreement. *See* *Zhang*, 344 F. Supp. 3d at 66. Third, Plaintiffs request fees under the EAJA, only on behalf of Mr. Hagiwara, which if they prevail would be paid by Defendants instead of being taken out of any common fund, which does not exist here.

Additionally, the Court agrees with Plaintiffs' concerns about wasting resources. The 2003 comments to Rule 23(h)(1) recognize that "in adjudicated class actions, the court may

calibrate notice to avoid undue expenses." Advisory Committee
Comment to Fed. R. Civ. P. 23(h)(1) (2003). This is not in the
context of 23(b)(2) cases alone; only class actions that have
been litigated to judgment. Taken in combination with a Rule
23(b)(2) class action where the only relief obtained by the
judgment is injunctive and non-monetary, the Court agrees that
this concern is especially compelling.

The most significant reason the Court finds this error
harmless is that there is no injury to the class members besides
the failure to follow the letter of Rule 23(h)(1). Simply put,
Plaintiffs' counsel and the class members are not adversarial;
if counsel recovers the full amount of fees it requests, that
decision would do nothing to diminish or even impact the relief
that the class members have obtained.

Still, the Court does not gloss over or condone Plaintiffs'
failure to comply with Rule 23(h)(1)'s technical requirements;
clearly, the safer course of action would have been for counsel
to provide notice to the class regarding its request for fees,
even if not individual notice. But this is also not a situation
where the failure to do so was so grave an issue that it
requires rejecting, or if the Court were to consider Plaintiffs'
request to permit them to effect notice if required, further
delaying consideration of the Motion when all other technical

and eligibility requirements are now satisfied.[6] *See also* Fed.
R. Civ. P. 61 ("Unless justice requires otherwise, no error in
admitting or excluding evidence—or any other error by the court
or a party—is ground for granting a new trial, for setting aside
a verdict, or for vacating, modifying, or otherwise disturbing a
judgment or order. At every stage of the proceeding, the court
must disregard all errors and defects that do not affect any
party's substantial rights."); *Athey v. United States*, 149 Fed.
Cl. 497 (2020) (holding that under Rule of U.S. Court of Federal
Claims 23(h)(1), which is phrased identically and interpreted
similarly to Federal Rule of Civil Procedure 23(h)(1), *see
Greenwood v. United States*, 131 Fed. Cl. 231, 243-44 (2017);
that the failure to provide notice was harmless in similar
circumstances).

### C. Attorneys' Fees, Expenses, and Costs

Because Plaintiffs have successfully shown that Mr.
Hagiwara qualifies for relief and that their motion should not
be denied for failure to provide notice pursuant to Rule

---

[6] Plaintiffs request that "[i]f the Court disagrees and holds
that actual notice of this EAJA motion must be served on all
absent class members, the Court should provide Plaintiffs'
counsel an opportunity to comply with the notice requirement
before deciding the EAJA motion." Reply to Mot. for Attorneys'
Fees, ECF No. 57 at 17 n.5. Further, Plaintiffs say that "to
provide direct notice of the motion, the Government would need
to provide Plaintiffs' counsel with current addresses of class
members—information which, to date, the Government has not
furnished." *Id.*

23(h)(1), the Court now addresses the merits of their request for fees and expenses and/or costs. The remaining disputes are related to: (1) the hourly rate to be used for fees; and (2) the work for which Plaintiffs' may recover, which includes (A) the work for which fees and expenses and/or costs were claimed in the initial motion, and (B) those incurred by providing the Supplement and Supplemental Reply.

### 1.   Hourly Rate for Fees

In this category, the only issue to resolve is whether Plaintiffs have shown that there is a special factor justifying an upward departure from the statutory EAJA cap. The parties agree that if the Court only orders Defendants to pay the lower EAJA rate, it should be adjusted for cost of living. *See* Mot. for Attorneys' Fees, ECF No. 51 at 19; Opp'n, ECF No. 54 at 24. The Court concludes that Plaintiffs have failed to show that a special factor exists.

In their Motion, Plaintiffs provided calculations for their fees based on three hourly rates: (1) their actual rate; (2) a rate based on the *Laffey* matrix; and (3) the statutory maximum under the EAJA adjusted for cost-of-living. *See generally* Mot. for Attorneys' Fees, ECF No. 51. They ask the Court to use their actual rate and argue that a "special factor" exists such that the EAJA cap should not apply. *Id.* at 18. Defendants argue that no special factor exists, and therefore, the Court should

28

enforce the statutory EAJA cap. *See* Opp'n to Mot. for Attorneys' Fees, ECF No. 54 at 18.

The EAJA provides, in relevant part, that "(ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Supreme Court has held that the "special factor . . . refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former include an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

To determine whether to grant fees that exceed the standard EAJA rate, the Court must determine whether: (1) the attorney has "distinctive knowledge or specialized skill"; (2) the knowledge and skills were "needful for the litigation in question—as opposed to an extraordinary level of general lawyerly knowledge and ability useful in all litigation"; and (3) there was a "limited availability of qualified attorneys for the proceedings involved" meaning that the party seeking fees

could not have obtained the knowledge and skills at the EAJA rate. *See id.* at 571-74.

Plaintiffs appear to raise two arguments for why a special factor exists.[7] First, they argue that "[t]his case presents the 'special factor' that counsel is among a select few in the country with experience and expertise in three distinct practice areas—(1) class-action litigation; (2) administrative law[;] and (3) employment-based immigration law—the 'rare' combination of which was necessary to achieve Plaintiffs' success." Mot., ECF No. 51 at 22 (citation omitted). Second, they argue that the EB-5 visa issue involved in this case required knowledge beyond basic immigration law and was the sort of '"esoteric nook[] and crann[y] of immigration law' . . . that satisfies the first factor of the *Pierce* analysis." Reply, ECF No. 57 at 20-21 (quoting *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004)). In support, Plaintiffs submit two declarations to describe their counsel's "experience and expertise in these areas" of law. *Id.* at 20. First, they submit a declaration from Ahilan Arulanantham, "a recipient of a MacArthur Foundation Fellowship ("Genius Grant") for work in immigration-related litigation." *Id.* (citing Decl. of Ahilant T. Arulanantham ("Arulantham

---

[7] The second argument regarding the niche immigration law issues involved may fall more properly under the second prong of the *Pierce* analysis.

Decl."), ECF No. 51-7). The second is a declaration from Stacy Tolchin, "a leader of the immigration litigation-bar." *Id.* (citing Dec. of Stacy Tolchin, ECF No. 51-6). The government argues that Plaintiffs' claimed expertise is not sufficient reason to find a special factor to go above the statutory rate. *See* Opp'n, ECF No. 54 at 21-22.

The Court agrees that Plaintiffs have not shown a special factor.[8] Plaintiffs predominately rely on non-binding authority, either cases from another United States Court of Appeals or district court opinions. But they fail to address D.C. Circuit precedent that this Court is bound to follow. The D.C. Circuit has repeatedly applied *Pierce's* interpretation of the EAJA to mean that expertise in various areas of law gained through practice, even in complex subjects, is not sufficient to show a "special factor." *See e.g.*, *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996) ("To be sure, lawyers practicing administrative law typically develop expertise in a particular regulated industry, whether energy, communications, railroads,

---

[8] Plaintiffs assert that Defendants "imply that knowledge of immigration law can never constitute a 'distinctive knowledge or specialized skill[.]"' Reply, ECF No. 57 at 18 (quoting Opp'n, ECF No. 56 at 20-21). Putting aside the Court's doubt as to whether Defendants actually make such an implication, this Court need not decide whether knowledge of the immigration system or topics can ever be the basis of a special factor. All that matters here is whether Plaintiffs have shown that their attorneys qualify for a special factor based on their claimed expertise, which, as discussed, they have not.

or firearms. But they usually gain this expertise from experience, not from the specialized training justifying fee enhancement. If expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements."); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 944, 950-52 (D.C. Cir. 2005) (reversing district court finding of a "special expertise in the federal milk marketing regime" even when the counsel had experience in the dairy industry because the district court based its decision on the attorneys' expertise gained through experience practicing law; not in the dairy industry); *In re Sealed Case 00-5116*, 254 F.3d 233, 235-36 (D.C. Cir. 2001) (reaching the same conclusion in a case involving a complex election law scheme).

Plaintiffs' arguments fail under D.C. Circuit precedent. As this Court has previously noted, the existence of multiple areas of law in one case does not in and of itself constitute a special factor. *See Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 191-92 (D.D.C. 2007) (citing, *inter alia*, *F.J. Vollmer Co.*, 102 F.3d at 598-99) (rejecting argument that specialty in a particular area of administrative law is a special factor). Plaintiffs' counsel's experience at the intersection of various areas of law is laudable and evidently contributed to their success in this litigation. But Plaintiffs fail to show how this expertise,

32

gained through litigation, rises to the level of a special

factor. *See e.g.*, *F.J. Vollmer Co.*, 102 F.3d at 598.

Nor have Plaintiffs shown that counsel's knowledge of

intricate immigration issues in this case is a special factor

consistent with D.C. Circuit precedent. *Cf. Select Milk*

*Producers, Inc. v. Johanns*, 400 F.3d 939, 944, 950-52. Whether

the immigration issues that exist in this case are among those

that other United States Courts of Appeal, but not the D.C.

Circuit, have found to make expertise in a specific area of

immigration law needed for the litigation is a different

question from whether Plaintiffs get past step one of the *Pierce*

analysis here.[9] To the extent Plaintiffs argue that the Court

should recognize complex immigration issues in this case as a

special factor,[10] this argument is premised on Plaintiffs'

counsel's expertise in the relevant immigration law topics

---

[9] The Courts of Appeal cases on which Plaintiffs rely are not
only non-binding on this Court and in at least some cases
distinguishable based on the court's actual holding being based
on the attorney's knowledge of foreign countries and cultures in
the asylum context, but they also appear to consider this issue
of whether there was a niche issue of immigration law at the
second step of the *Pierce* analysis; whether the expertise or
special factor was needful for the litigation. *See Ashcroft v.
Muhur*, 382 F.3d 653, 656 (7th Cir. 2004). Those United States
Courts of Appeal cases also acknowledged that the Circuits
differ as to when or whether immigration specialization can be
sufficient for a special factor. *See Nadarajah v. Holder*, 569
F.3d 906, 914 (9th Cir. 2009).
[10] Plaintiffs assert that the issues involved were intricate and
complex, *see* Reply, ECF No. 57 at 20-21; while Defendants
disagree, *see* Opp'n, ECF No. 56 at 22.

gained through practice. Plaintiffs make no attempt to square such a theory with the D.C. Circuit's precedent holding that such claimed expertise is generally not a special factor. The Court therefore rejects Plaintiffs' arguments regarding *Pierce* step one and need not reach the other steps of this analysis.[11] Accordingly, the Court concludes that Plaintiffs will recover fees at the statutory rate, adjusted for cost-of-living in the year for which the services were performed.[12]

### 2.    Fees, Expenses, and Costs to be Recovered

Plaintiffs have satisfied their obligation to submit an "itemized statement from any attorney . . . representing . . . the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B). To show that their request is reasonable under § 2412 (d)(2)(A), a plaintiff's "supporting documentation must be of sufficient detail and probative value to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v.*

---

[11] Because the Court holds that Plaintiffs shall receive fees at the statutory rate, it need not determine whether their counsels' billing rates were reasonable.

[12] Courts regularly approve cost-of-living adjustments to the base EAJA rate. *See Role Models Am., Inc.*, 353 F.3d at 969 ("We have granted such adjustments in other cases, *see, e.g., Cooper v. United States R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C.Cir.1994) (per curiam); *Jones v. Lujan*, 887 F.2d 1096, 1101 (D.C.Cir.1989) (per curiam), and have found no case where we denied one.").)

*Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (internal quotation marks and alterations omitted) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam)). Satisfactory documentation consists of "contemporaneous time records of hours worked ... plus a detailed description of the subject matter of the work with supporting documents, if any." *Ashraf-Hassan*, 189 F. Supp. 3d at 58 (quoting *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1933). A fixed, percentage reduction may be warranted when a large number of billing entries suffer from one or more deficiencies. *Role Models Am., Inc.*, 353 F.3d at 973. District Courts have "substantial discretion in fixing the amount of an EAJA award." *Jean*, 496 U.S. at 163.

Plaintiffs have submitted several exhibits relevant to their fee, expense, and cost determinations: (1) original chart of fees through the filing of their Motion ("Original Fee Chart"), *see* Original Fees Chart, ECF No. 51-1; (2) original chart of expenses and/or costs through the filing of their Motion ("Original Expenses/Costs Chart"), *see* Original Costs Chart, ECF No. 51-2; (3) supplemental chart of fees expended on their Attorneys' fees Reply ("Reply Fees Chart"), *see* Reply Fees Chart, ECF No. 57-1; (4) supplemental chart of fees expended in

preparation of the Court-ordered Supplement, *see* Supp'l Fees

Chart ("Supplement Fees Chart"), ECF No. 62-4; (5) supplemental

chart of expenses and/or costs expended in preparation of the

Supplement ("Supplement Expenses/Costs Chart"), *see* Supp'l Costs

Chart, ECF No. 62-5; (6) supplemental chart of expenses and/or

costs expended for Reply to Supplement ("Supplemental Reply

Expenses/Costs Chart"), *see* Supp'l Reply Costs Chart, ECF No.

67-2; and (7) supplemental chart of fees expended for Reply to

Supplement ("Supplemental Reply Fees Chart"), *see* Supp'l Reply

Fees Chart, ECF No. 67-3. The fee requests total $218,104.00,

broken down as follows:

| Document | Hours | Fees (CPI-Adjusted EAJA) |
|---|---|---|
| Original, ECF No. 51-1 | 1017.85 | $198,645.00 |
| Reply, ECF No. 57-1 | 36.8 | $7,618.00 |
| Supp'l, ECF No. 62-4 | 30.7 | $7,184.00 |
| Supp'l Reply, ECF No. 67-3 | 19.9 | $4,657.00 |
| **TOTAL** | **1105.25** | **$218,104.00** |

*See* Original Fees Chart, ECF No. 51-1; Reply Fees Chart, ECF No.

57-1; Supp'l Fees Chart, ECF No. 62-4; Supp'l Reply Fees Chart,

ECF No. 67-3.

Plaintiffs did not distinguish "expenses" from "costs" in

their submissions; and the government refers to the entries as

"costs." *See* 28 U.S.C. § 2412 (distinguishing costs from

expenses); 8.D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.

§ 2666 (4th ed.). The Court will address which expenses or costs

36

are reimbursable below, but the total of all relevant charts
submitted is $23,652.00, broken down as follows:

| Document | Costs |
|---|---|
| Original, ECF No. 51-2 | $3,802.00 |
| Supp'l, ECF No. 62-5 | $16,487.00 |
| Supp'l Reply, ECF No. 67-2 | $3,363.00 |
| **TOTAL** | **$23,652.00** |

*See* Original Expenses and/or Costs Chart, ECF No. 51-2; Supp'l
Expenses and/or Costs Chart, ECF No. 62-5; Supp'l Reply Expenses
and/or Costs Chart, ECF No. 67-2.

As explained below, the billing entries that Plaintiffs
provide are generally non-duplicative, not excessive, and
contain sufficient detail for the Court to assess counsels'
activities. *See generally* Ex. A, ECF No. 51-1. The Court
therefore declines to impose the across-the-board reduction of
fifty percent that the government seeks and instead will make a
handful of reductions in certain instances explained below.

### a. Attorneys' Fees

Plaintiffs argue that the amount of fees requested in their
Motion are reasonable because of their high degree of success in
obtaining full relief on two causes of action; that the total
number of hours is reasonable compared to similar cases; and
that none of the hours are duplicative, unnecessary, unrelated,
or manufactured. *See* Mot., ECF No. 51 at 17-18. The government
"opposes the amount of work hours Mr. Hagiwara's counsel claim"

and asserts that "many hours are: (a) excessive and duplicative, and (b) lack adequate support because they are lumped together." Opp'n, ECF No. 54 at 25. The government asks the Court to impose an across the board fifty-percent reduction in Plaintiffs' fees due to these issues. *See id.* at 31. Additionally, it asks the Court to deny Plaintiffs' request for costs entirely. *Id.* In reply, Plaintiffs argue that an across the board fifty-percent cut is not warranted; that it is common for plaintiffs to have multiple attorneys involved in litigation when senior attorneys delegate tasks to and supervise junior attorneys; and that their billing entries are reasonable, sufficiently detailed, and non-duplicative. *See* Reply, ECF No. 57 at 24-26.

Defendants do not argue that Plaintiffs should be unable to recover fees for the preparation of their Reply brief, but they do assert that Plaintiffs should not recover fees and expenses and/or costs for preparation of their Supplemental briefing. *See* Opp'n to Supp'l, ECF No. 56 at 8-9. Plaintiffs disagree and argue that they can recover fees and expenses and/or costs for this work because the EAJA covers all phases of successful civil litigation. *See* Reply to Supp'l, ECF No. 57 at 9-10.[13]

---

[13] The Court includes Plaintiffs requests for supplemental fees in its analysis of the specific issues the government raises about billing practices because it concludes that Plaintiffs may recover those fees.

### i. Administrative Work and Filings

Plaintiffs do not dispute that they are unable to recover administrative and filing expenses; and therefore, this issue is conceded. *See e.g.*, *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003). The Court therefore deducts 23.2 hours for billing entries related to filings and an administrative entry (testing equipment in courtroom) in Plaintiffs' Original Fees Chart. *See* Original Fees Chart, ECF No. 51-1. at 5 (two filing entries), 6 (one filing entry), 10 (two filing entries), 12 (two filing entries), 16 (one filing entry), 17 (one filing entry), and 19 (administrative entry).[14] Additionally, the Court deducts 1.75 hours from the Supplemental Reply Fees Chart for a filing entry. *See* Supp'l Reply Fees Chart, ECF No. 67-3 at 5. from subsequent charts. In total, this is a reduction of 24.95 hours, which, accounting for CPI adjustments, is $5,020.38.

---

[14] As noted, the Court declines to make across the board cuts for block billing entries because the nature of the work completed can be sufficiently understood from the entries, despite the fact that this method of billing is disfavored. *See Role Models,* 353 F.3d at 971. But, because some of the filing and/or administrative task entries appear as part of block billing, the Court is unable to ascertain the amount of time spent doing this work compared to the other tasks listed. Therefore, the Court has applied a fifty percent reduction to those specific entries. The Court does so despite the fact that the majority of the work listed in those entries is substantive legal work because Plaintiffs' Counsel chose to bill in this disfavored way. *See also id*. at 973. For the three filing entries that were not part of block billing, the Court reduced the full amount of time.

####                                         ii.        Staffing and Alleged Duplication

Even though multiple lawyers worked on Plaintiffs' case, the record shows that aside from three limited instances, they do not seek fees for duplicative work. Two attorneys performed most of the work throughout the litigation, Edward Ramos ("Mr. Ramos") and Ira Kurzban ("Mr. Kurzban"). *See generally id.* The five other individuals listed on the billing entries appear to have performed discrete tasks and only appear in a handful of entries. *See generally* Original Fees Chart, ECF No. 51-1 (listing 12 entries for John Pratt; 12 entries for Ian Shaw; 6 entries for Ross Militello; 5 entries for Celso Perez; and 2 entries for Elizabeth Montano); Reply Fees Chart, ECF No. 57-1; Supp'l Fees Chart, ECF No. 62-4; Supp'l Reply Fees Chart, ECF No. 67-3. The record does not show that the work these other attorneys conducted duplicated that of Mr. Ramos or Mr. Kurzban.[15]

Moreover, the record shows that Plaintiffs often delegated work from a lead attorney with a higher billing rate to a more junior attorney with a lower billing rate; a method of

---

[15] The government attempts to describe the total amount of hours each attorney spent on various phases of litigation as evidence of duplication, *see* Opp'n, ECF No. 54 at 26–27, but the record shows in greater detail how these attorneys spent their time during these litigation phases in non-duplicative ways, *see* Original Fees Chart, ECF No. 51-1. The question of whether the amount of time spent is reasonable is discussed later.

responsible representation that the government implies they
failed to do. *See* Opp'n, ECF No. 54 at 25 (citations omitted)
("This includes reducing hours claimed when a senior attorney
spends time on tasks that are easily delegable or billed at
lower rates."). Specifically, Mr. Ramos "provided successful
representation at a lower billable rate [than] and received
oversight, supervision, review, and collaboration from" Mr.
Kurzban, a more senior attorney. Reply, ECF No. 57 at 25. Mr.
Ramos in turn delegated some tasks to even more junior
attorneys. *See id.* Therefore, the fact that multiple attorneys
generally performed distinct work on Plaintiffs' case does not
make this work unreasonable or duplicative. *Cf* Opp'n, ECF No. 54
at 25-26.

The Court makes a relatively small reduction, however, of
29.7 hours for what appear to be six entries of duplicative work
out of the more than 300 entries total. *See id.* at 3 (two
entries describing similar work by Mr. Shaw on May 6 and 21,
2015), 4 (an entry describing similar work to another entry by
Mr. Shaw on June 2, 2015), 5 (two descriptions of similar work
from Mr. Kurzban on June 10, 2015), 18 (two entries for the same
phone call), 19 (two entries for oral argument). Notably, some
of the entries, especially those of Mr. Pratt, that appear
duplicative occurred on two separate days, meaning that Mr.
Pratt could have *continued* doing the research he started the

41

prior day. But, because Plaintiffs do not address these entries, the Court errs on the side of caution and deducts the apparently duplicative entry for the same research work with the greater number of hours. These limited instances fall far short, however, of being a pervasive issue warranting across the board cuts. Indeed, it appears throughout the records that Plaintiffs' counsel also made efforts to ensure that they only billed one entry for conversations that included multiple attorneys. *See* Ex. A, ECF No. 51-1 at 4 (only listing one billing entry on May 25, 2015 for a conference call with multiple attorneys). For that reason, the Court makes a reduction of 29.7 hours, which is $5,381.29.

### iii. Sufficiently Justified and Non-Excessive

The government asserts that Plaintiffs seek fees for excessive hours that lack sufficient justification. Courts often address these considerations simultaneously because whether the number of hours is justified can depend on the amount of detail given for the description of work. Therefore, the Court follows that approach here and concludes that the number of hours that Plaintiffs seek are reasonable, not excessive, and sufficiently justified.

First, Plaintiffs' counsel achieved a high degree of success in their litigation. As Plaintiffs describe it, they "prevailed on the merits of two causes of action which

independently entitled them to complete relief: full
invalidation of the loan proceeds rule for both pending *and*
future-filed EB-5 petitions." Mot., ECF No. 51 at 12 (citing
*Zhang*, 344 F. Supp. 3d at 43). In order to achieve this result,
Plaintiffs' counsel: (1) succeeded in obtaining summary judgment
on two of the counts brought in their complaint that challenged
the government's interpretation of the EB-5 visa regulation and
the Administrative Procedure Act's requirements for promulgating
such rules, which were the only causes that this Court reached
because they disposed of the case, *see Zhang*, 344 F. Supp. 3d at
43; (2) successfully obtained class certification; and (3)
successfully defended against the government's appeal. *See id.*;
*Zhang*, 978 F.3d at 1325. As this Court previously recognized,
"[b]ased on the briefing in this case, counsel clearly devoted
substantial time and efforts to this litigation." *Zhang*, 344 F.
Supp. 3d at 65.

Indeed, as Plaintiffs point out, courts have approved a
greater number of hours than those sought here in cases with
similar litigation history. For example, in *Loving v. Internal
Revenue Serv.*, Civ. Action No. 12-385, 2014 WL 12778284, *6
(D.D.C. Sept. 19, 2014), the plaintiffs sought compensation for
over 1,700 hours (including 1601.25 hours of attorney time in
addition to paralegal time). *Id.* The court "decline[d] the IRS's
request for across-the-board cuts" by more than 40% to 1,000

hours because and remarked that "[t]he choice of a hatchet is particularly inappropriately here for several reasons." *Id.* These included: "[f]irst and foremost, [that] Plaintiffs prevailed at every stage of th[e] litigation and achieved the entirety of their requested relief." *Id.* As the Court noted, the Supreme Court has held that "[d]egree of success is "the most critical factor" in evaluating the reasonableness of a fee award." *Id.* (citing *Hensley*, 461 U.S. at 436). After explaining its specific reductions, the court ultimately awarded the plaintiffs fees for 1,296.25 hours, a reduced amount that still exceeds the total 1,105.25 hours that Plaintiffs seek here. Notably, Mr. Kurzban explains in his declaration that "[i]n preparing this EAJA motion, [he] exercised billing judgment . . . and eliminat[ed] billing entries corresponding to dozens of hours of work . . . although these entries and hours are compensable under EAJA." Kurzban Decl., ECF No. 51-3 ¶ 18. The Court agrees that the overall number of hours, and the hours spent on certain phases of litigation, are reasonable in light of the procedural history of this case and counsel's high degree of success.

Second, the cases on which the government relies to argue that the hours Plaintiffs request are excessive are distinguishable from the record here. For example, in *New Jersey v. EPA*, 703 F.3d 110, 113-14 (D.C. Cir. 2012), the movants

sought 121 hours for preparing for an oral argument that they ended up not delivering; leading the Court to reduce the hours to 25% of the requested amount, 30.25 hours. *See New Jersey*, 703 F.3d at 116. Here, Plaintiffs requested less than 40 hours to prepare for the oral argument per the government's calculation, *see* Opp'n, ECF No. 54 at 29; which Mr. Kurzban ultimately delivered.[16] *Compare also Loving*, 2014 WL 12778284, at *8 (finding 230.75 hours preparing for oral argument to be excessive and reducing the amount of time to 70 attorney hours and 10 paralegal hours). Similarly, the D.C. Circuit found the plaintiffs' request for 227.5 hours in preparing their motion for attorneys' fees and responding to the defendants' opposition "grossly excessive" and reduced the compensation to 91 hours. *New Jersey*, 703 F.3d at 116. Here, Plaintiffs seek only approximately 50 hours, which includes 24 hours for compiling their EAJA fee petition and 36.8 hours for their Reply. Original Fees Chart, ECF No. 51-1 at 20; Reply Fees Chart, ECF No. 57-1; *compare Loving*, 2014 WL 12778284, at *8 (reducing sought 190.25 hours to 80 hours).

---

[16] This does not account for the deductions that this Court has already made to exclude Mr. Ramos's time for "oral argument" that Mr. Kurzban delivered, and Mr. Kurzban's time testing equipment at the Court, putting the total number of hours related to oral argument at approximately 30 hours.

Third and finally, the descriptions that Plaintiffs provide for their work are generally adequate. Defendants are correct that courts have held that generic descriptions do not give the court enough information to evaluate the work for which a plaintiff seeks reimbursement. *See* Opp'n, ECF No. 54 at 29 (quoting *Doe*, 501 F. Supp. 2d at 193) (referencing this Court's prior admonition that sparse entries simply listing "research", "writing", or "participating in teleconference" are inadequate). The Court concludes, however, that even the sparser descriptions in the record here give the Court sufficient information by which to assess Plaintiffs' counsel's work. For example, the government takes issue with the fact that several billing entries in a row state that an attorney was working on a certain brief. *See id.* at 30. While additional details about what specific aspect of the brief the attorney worked on could have been helpful, these entries still give the court enough information to assess the work for which Plaintiffs request fees. *Cf Doe*, 501 F. Supp. 2d at 193. Under these circumstances, more detail is not needed to determine whether this work was reasonable.[17]

---

[17] For example, one of the series of entries with which the government takes issue relates to Mr. Ramos's work on the appeal briefs. *See* Opp'n, ECF No. 54 at 30. Even in those cases where he did not provide more details, Mr. Ramos still specified the brief on which he was researching, writing, and working so that

Further, many of the entries that Plaintiffs include contain far more detail than the descriptions that have been found insufficient by other courts. For example, in *New Jersey*, 703 F.3d at 113-14, the D.C. Circuit held that descriptions such as "reviewing case materials" and "review of key strategy issues and mercury materials" are too generic and lack required specificity to justify the amount of time spent on initial case preparations. *Id.* (internal quotations & alterations omitted). Here, in contrast, the entries related to initial case preparations those for researching or reviewing "USCIS/LEGACY INS MEMORANDA ON INDEBTEDNESS AND/OR LOAN PROCEEDS AS CAPITAL" and "REVIEWING POTENTIAL PLAINTIFF'S I-526 AND RFE AND DENIAL NOTICES." Original Fee Chart, ECF No. 51-1 at 2-3.

The Court therefore concludes that the amount of time that Plaintiffs' counsel spent on this litigation is reasonable in light of their high degree of success, as compared to other similar litigation, and adequately supported in their records.[18]

---

the Court could assess whether the time spent was reasonable. *See* Original Fee Chart, ECF No. 51-1 at 18.

[18] The government correctly notes that this Court has previously observed that the practice of block-billing is disfavored. *See* Opp'n, ECF No. 54 at 30. Here, the record shows that attorneys engaged in this practice somewhat regularly throughout entries. But even in the situations where Plaintiffs' counsel engaged in this practice, many of the entries often could have naturally fallen under the same category of conducting research for a certain brief, for example, and actually provide more information about the work performed than such a short description. *See e.g.* Original Fee Chart, ECF No. 51-1 at 2-4.

The Court will not make any further deductions to the fees than those previously listed, meaning that Plaintiffs shall recover for 1050.6 hours which, adjusted for CPI rates, is $207,702.33.[19]

### b. Supplements

Plaintiffs seek to recover fees and costs for their counsel's work on the supplemental briefing on Mr. Hagiwara's net worth that this Court ordered. *See* Supp'l, ECF No. 62 at 6. Defendants argue that Plaintiffs cannot recover such fees and costs because parties can only recover fees for *successful* litigation. *See* Opp'n to Supp'l, ECF No. 66 at 8–9. According to Defendants, the Court ordered supplemental briefing on Plaintiffs' EAJA eligibility because they were not successful in showing this previously. *See id.* The Court disagrees with Defendants' interpretation.

First, it is widely accepted that a prevailing party under the EAJA may recover fees for all stages of litigation, including their request for attorneys' fees itself. *Jean*, 496 U.S. at 161–66. Indeed, "Congress intended the EAJA to cover the

---

Although block billing is disfavored, the Court does not hold that any additional reductions, let alone an across-the-board drastic cut of 50%, is warranted because, as noted, Plaintiffs provided sufficient detail for the Court to ascertain what work was performed and the amount of time spent on the work.
[19] This accounts for the total combined deductions of 54.65 hours and $10,401.67.

cost of all phases of successful civil litigation addressed by the statute." *Id.* at 166 (emphasis added).

Second, it is incorrect to say that Plaintiffs were *unsuccessful* in their attempt to show EAJA eligibility. Rather than outright denying Plaintiffs' Motion, the Court denied it without prejudice to the extent that it ordered supplemental briefing on the eligibility question and held the remainder of the motion in abeyance. *See* Mem. Op., ECF No. 58; Order, ECF No. 59. In so doing, the Court recognized that a declaration alone can be sufficient to show a plaintiffs' eligibility for EAJA relief but held that in light of the government's arguments about purported credibility issues and inconsistencies between Mr. Hagiwara's statements and the AR, additional information was necessary to make such a determination. *See* Mem. Op., ECF No. 58 at 6–14. The Court did *not* conclude that Mr. Hagiwara was ineligible for fees based on the briefing that accompanied Plaintiffs' initial Motion. Indeed, it remarked that "Defendants' evidence does not establish that Mr. Hagiwara's net worth exceeded $2,000,000." Mem. Op., ECF No. 58 at 13. The Court's prior ruling merely held that it needed additional information to make its determination.

Third, Plaintiffs have now prevailed on this issue. It is therefore incorrect to say that Plaintiffs have not prevailed on their Supplement.

Fourth and finally, the government cites no authority for the proposition that in cases in which courts have required supplemental briefing, such briefing is construed as unsuccessful litigation for which a fee-seeking party cannot recover. *See* Opp'n to Supp'l, ECF No. 66 at 8-9. Instead, the government rests only on its own interpretation of *Jean* which this Court finds unpersuasive.

Accordingly, the Court will grant Plaintiffs' request for most of the fees requested in their charts submitted with their Supplement and Reply Supplement. Even though the government did not raise any specific issues regarding the fee chart that Plaintiffs submitted with their Supplement and Reply Supplement, the Court made minor deductions when considering the issues related to filing expenses discussed above.

### c. Expenses and Costs

As noted, Plaintiffs have submitted various charts and documents supporting their requests for expenses and/or costs. *See* Original Expenses and/or Costs Chart, ECF No. 51-2; Supp'l Expenses and/or Costs Chart, ECF No. 62-5; Reply to Supp'l Expenses and/or Costs Chart, ECF No. 67-2. The Court will briefly summarize each submission.

The Court first addresses the original expenses/costs chart. Even though many, if not all, of the items listed on this original chart appear to be more properly classified as "costs",

Plaintiffs refer to them as expenses. *See* Mot., ECF No. 51 at
16. But Plaintiffs did not discuss their request for "expenses"
in detail in their Motion, *see id.*; and argue in Reply that "the
expenses included in Exhibit B of Plaintiffs' Motion are self-
explanatory and routinely recoverable." Reply, ECF No. 57 at 26.
The government argues that "[r]ecovery for costs and expenses
must be limited to the itemized list in 28 U.S.C. § 1920 and
those necessary to the litigation." Opp'n, ECF No. 54 at 31. In
so doing, it conflates what are recoverable "expenses" and
"costs," *see id.* ("Title 28, United States Code, Section 1920,
permits a judge to tax six enumerated categories of expenses,
none of which are appropriately requested."), as § 2412 limits
recoverable "costs" to those six categories enumerated in §
1920, but not "expenses." 28 U.S.C. § 2412(a)(1).

With respect to Plaintiffs' original request, the Court
agrees that there is not enough detail about the claimed costs
and/or expenses by which it can assess whether these are
reasonable and appropriate for this case. Although Mr. Ramos's
declaration claims that the "expenses" attached are for work in
this litigation, *see* Ramos Decl., ECF No. 51-4 ¶ 10; the only
information included in Exhibit B is the "Date" "Expense" "Cost
per page" and "Total Cost". Original Expenses and/or Fees Chart,
ECF No. 51-2. Nearly every "Expense" listed is for "DOCUMENT
REPRODUCTION", which seems to fall within the definition of 28

U.S.C. § 1920(3), a cost. The other entries are for Westlaw, Pacer Service Center, or FedEx. *Id.* But there is no information in either the chart or the Motion to explain how these costs relate to this case. *See id.* Therefore, the Court is unable to assess whether the costs were reasonable or how they were related to this litigation. Plaintiffs will therefore not recover the costs or expenses sought in their original motion.

The expenses and costs information that Plaintiffs submitted related to their supplements are, however, much more detailed. *See* Supp'l Expenses and/or Costs Chart, ECF No. 62-5; Supp'l Reply Expenses and/or Costs Chart, ECF No. 67-2. Notably, the government makes no specific argument with respect to the adequacy of justification or documentation for these costs and expenses other than its general argument that Plaintiffs should recover *no* fees, costs, or expenses for anything related to the supplements, *see* Opp'n to Supp'l, ECF No. 66 at 8-9; an argument this Court has rejected. The expenses for which Plaintiffs seek to recover related to the Supplement and Reply to Supplement are: (1) translation of Japanese Language Documents; (2) Fees for Japanese CPA Fumitaka Kojima; (3) Fees for Japanese Attorney Rie Tohyama; (4) Fees for Forensic Accountant (Kapila Mukamal); and (5) additional Fees from Kapila Mukamal related to the Reply to Supplement. *See* Supp'l Expenses and/or Costs Chart, ECF No. 62-5; Reply to Supp'l Expenses and/or Costs Chart, ECF No. 67-2.

52

These items are documented in detail as Plaintiffs submitted invoices showing the costs for the relevant services. *See* Supp'l Expenses and/or Costs Chart, ECF No. 62-5; Reply to Supp'l Expenses and/or Costs Chart, ECF No. 67-2. The only question that remains, therefore, is whether these are the types of expenses for which Plaintiffs can recover.

A prevailing party may recover "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case . . . ." 28 U.S.C. § 2412(d)(2)(A). Here, the services that Plaintiffs obtained and for which they seek to recover expenses fit these categories. After the Court ordered that more information was needed to substantiate Mr. Hagiwara's representations about his net worth, and ergo his EAJA eligibility, at the time the suit began, Plaintiffs obtained and submitted expert analyses to verify Mr. Hagiwara's representations. *See generally* Supp'l, ECF No. 62 (explaining additional evidence submitted). This includes the forensic accounting report and supplemental declaration from Kapila and the expert report from Japanese Attorney Rie Tohyama about asset ownership determination under Japanese law. As discussed above, Defendants submitted no contrary evidence or expert reports, and the Court found Plaintiffs' supplemental materials persuasive and sufficient to reject Defendants'

arguments that Mr. Hagiwara's testimony is not credible. Therefore, these expenses were necessary for Plaintiffs to prevail. Moreover, as noted, the government does not make any specific challenges to Plaintiffs' ability to recover these expenses if they can indeed recover for their supplemental work. Plaintiffs shall therefore recover the full amount of expenses in their Supplement and Reply to Supplement, $19,850.00.

**IV.  Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' Motion for Attorney's Fees, ECF No. 51. Plaintiffs shall recover $207,702.33 in fees and $19,850.00 in expenses. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **September 29, 2025**